**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| WENDELL DAVIS,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF ST. LOUIS, MISSOURI and<br>OFFICER AMON FIGGS, in his individual<br>capacity,<br><br>                    Defendants. | Case No.  **4:22-cv-00902**<br><br>**DOCUMENT FILED**<br>**ELECTRONICALLY**<br><br>**JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

Plaintiff Wendell Davis complains and alleges as follows:

## <u>PARTIES</u>

1.      Plaintiff Wendell Davis is a resident and citizen of the City of St. Louis, Missouri.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1367.

2.       Defendant City of St. Louis is a governmental entity created by and established

under the laws of the State of Missouri, including pursuant to Article VI, § 1 of the Missouri

Constitution. At all times relevant hereto, Defendant City of St. Louis acted through its agents

and employees, including Officer Amon Figgs and other agents and employees of the St. Louis

Metropolitan Police Department ("SLMPD").

3.      Defendant Amon Figgs at all times relevant herein was a police officer for the

SLMPD working under the direction and control of Defendant City of St. Louis. At all times

relevant hereto, Defendant Figgs was a resident of the State of Missouri. The claims against

Defendant Figgs are brought in his individual capacity.

## JURISDICTION AND VENUE

4.     Plaintiff brings this Complaint pursuant to 42 U.S.C. § 1983 and the Fourth Amendment, as incorporated against the states and their municipal divisions through the Fourteenth Amendment.

5.     The jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

6.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims.

7.     Venue is proper in the United States District Court for the Eastern District of Missouri, pursuant to 28 U.S.C. § 1391(b)(2), as the events giving rise to the claims occurred in the City of St. Louis.

## FACTS

8.     On August 31, 2017, Defendant Figgs was patrolling in St. Louis, Missouri when he noticed a parked vehicle with a license plate similar to one on his "hot sheet," a list containing license plates of cars that were reported stolen.

9.     Upon inspection, Defendant Figgs determined that the plate did not actually match his list. Defendant Figgs contacted his colleagues to run additional searches of the plate. The plate did not match any vehicle that was on record for being reported as stolen.

10.     Even though neither the vehicle nor the plates matched any SLMPD's records and he had no other basis for stopping the vehicle, Defendant Figgs determined that he would stop the vehicle to ascertain whether the vehicle was stolen.

11.     Before approaching the vehicle, Defendant Figgs and the SLMPD set up spike teams in several different locations.

-2-

12.     Defendant Figgs surveilled Plaintiff entering the vehicle and followed the vehicle in his own cruiser as it left. Plaintiff was not driving the vehicle.

13.     The vehicle was ultimately stopped when officers deployed the spike strips to flatten the vehicle's tires. Plaintiff exited the vehicle along with the driver. Defendant Figgs then pursued Plaintiff on foot.

14.     When Defendant Figgs caught up to Plaintiff, the parties were located between Maffitt Avenue and Prairie Avenue in St. Louis, where no other officers or individuals were out in the open.

15.     Subsequently, Defendant Figgs shot Plaintiff three times in the back.

16.     At all times, Defendant Figgs was equipped with a Taser. However, Defendant Figgs never attempted to use his Taser and instead chose to fire a deadly weapon at Plaintiff.

17.     Defendant Figgs shot Plaintiff without warning, such that Plaintiff had no opportunity to respond to a threat of being shot.

18.     Plaintiff's actions leading up to the shooting did not put Defendant Figgs in reasonable fear for his life or safety and did not otherwise justify the use of deadly force. At no point did Plaintiff brandish or threaten Defendant Figgs with a deadly weapon.

19.     Plaintiff sustained grave injuries as a result of the shooting, such that Plaintiff is now paralyzed from the waist down.

## CAUSES OF ACTION

### COUNT I
### Excessive Force Against Defendant Amon Figgs in Violation of § 1983 and the Fourth and Fourteenth Amendments

20.     Plaintiff hereby incorporates paragraphs 1-19 as if fully set forth herein.

21.     Defendant Figgs first intended to approach Plaintiff to ascertain whether the car Plaintiff was riding in was stolen.

22.     Before attempting to approach the driver of the vehicle, however, Defendant Figgs, with assistance from the SLMPD, decided to set up spike teams for a regular traffic stop. These spikes were eventually deployed to flatten the tires of the vehicle.

23.     Additionally, Defendant Figgs used deadly force, firing three shots at Plaintiff's back, under unreasonable circumstances and with intent to cause serious bodily harm.

24.     Defendant Figgs shot Plaintiff with a deadly weapon without warning Plaintiff.

25.     Defendant Figgs had a duty to ascertain whether Plaintiff posed an immediate threat to the safety of Defendant Figgs or others. Plaintiff never brandished or threatened Defendant Figgs with a weapon, and no other parties were present at the time of the shooting to be at risk of harm. Yet, Defendant Figgs chose to fire a deadly weapon at Plaintiff.

26.     A reasonable officer in Defendant Figgs's position would have understood that he should have given Plaintiff warning that he would use a deadly weapon on Plaintiff and given Plaintiff an opportunity to respond.

27.     The use of deadly force was clearly excessive and unreasonable under the circumstances in that Defendant Figgs was not under threat of serious bodily harm. No other person was present at the time of the shooting that Defendant Figgs could have believed was under threat of serious bodily harm.

28.     Defendant Figgs's conduct in setting up spike teams for a regular traffic stop and the use of deadly force constitutes excessive use of force that was unreasonable, unlawful, and unconstitutional.

29.     As a direct result of Defendant Figgs's unlawful shooting of Plaintiff, performed under color of law and as an exercise of Officer Figgs's authority as an SLMPD officer, Plaintiff suffered permanent grievous bodily harm and permanent paralysis and was deprived of his right to be secure in his person and secure from the use of excessive force in violation of his rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Wendell Davis prays judgment against Defendant Figgs for compensatory damages in an amount which is fair and reasonable, for punitive damages in order to punish Defendant Figgs and to deter him and others similarly situated from like conduct in the future, and for the costs of this action, attorney's fees, interest, and such other and further relief as the Court deems fair and proper under the circumstances.

## <u>COUNT II</u>
**Unreasonable Seizure Against Defendant Amon Figgs in Violation of § 1983 and the Fourth and Fourteenth Amendments**

30.     Plaintiff hereby incorporates paragraphs 1-19 as if fully set forth herein.

31.     Defendant Figgs shot Plaintiff in the back three times with a deadly weapon. At the time of the shooting, Defendant Figgs was not under imminent threat of bodily harm. No other persons were at the scene that Defendant Figgs could have perceived were under imminent threat of bodily harm.

32.     Defendant Figgs was equipped with a Taser but chose to use a deadly weapon against Plaintiff to restrict Plaintiff's movement.

33.     By shooting Plaintiff with a deadly weapon, Defendant Figgs seized Plaintiff using excessive force that was unreasonable under the circumstances.

34.     Defendant Figgs, under color of law and as an exercise of his authority as an SLMPD officer, deprived Plaintiff of his right to be free from unreasonable seizure of his person in violation of his rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Wendell Davis prays judgment against Defendants for compensatory damages in an amount which is fair and reasonable, for punitive damages against Defendant Figgs in order to punish and to deter him and others similarly situated from like conduct in the future, and for the costs of this action, attorney's fees, interest, and such other and further relief as the Court deems fair and proper under the circumstances.

## COUNT III
**Municipal Liability Under § 1983 Against Defendant City of St. Louis for Customs of Use of Excessive Force, and Failure To Train, Supervise, and Discipline**

35.     Plaintiff hereby incorporates paragraphs 1-19 as if fully set forth herein.

36.     Defendant City of St. Louis is vested with the authority to establish policies, customs, practices, and usages of the SLMPD through training, supervision, discipline, and otherwise controlling the officers of the SLMPD.

37.     There exist within the SLMPD policies, customs, practices, and usages that are so pervasive that they constitute the policies of the department, such that they are and were the moving force behind and thereby caused the constitutional deprivations of Plaintiff as have been set forth herein.

38.     The policies, customs, practices, and usages that exist include:

a.     SLMPD officers use improper and outdated policies and procedures that unnecessarily put the public at risk;

b.     SLMPD officers use excessive force without regard for the need for the use of force, or without regard for the legality of its use;

-6-

c.     SLMPD officers engage in conduct that is violative of the constitutional rights of citizens with whom they come in contact, including but not limited to arresting, detaining, and prosecuting people in violation of the constitution and laws;

d.     SLMPD officers do not use the least intrusive means of force necessary, and the officers, by their words or actions, escalate encounters with citizens, creating or causing the need for officers to use force or to use more force than otherwise would have been required;

e.     SLMPD officers use deadly force to combat non-deadly force or use deadly force in situations that could be controlled by the use of other means.

f.     SLMPD has the highest rate of police killings per capita than any other of the 100 largest police departments in the nation. SLMPD fails to adequately investigate police shootings and to discipline the officers responsible.

39.     On information and belief, Defendant City of St. Louis had actual notice, or at least should have known, of these pervasive policies, customs, practices, and usages because of, among other things, a pattern of prior incidents of use of excessive force by officers. *See, e.g.*, *Morgan-Tyra v. City of St. Louis*, No. 4:18-CV-01799-AGF, 2019 WL 5597094 (E.D. Mo. Oct. 30, 2019); *Green v. City of St. Louis*, No. 4:19-CV-1711 DDN, 2019 WL 4986075 (E.D. Mo. Oct. 8, 2019).

40.     The pattern of prior incidents of excessive force includes multiple incidents of improper use of lethal force, including officers' use of firearms. Among other things, publicly

-7-

available Internal Affairs Division data shows that during the time period prior to the incident in question, between 2006 and 2017, there were 358 complaints regarding the use of force or violation of the use of force policy brought against SLMPD officers. However, this same data reflects that charges against officers were sustained in only approximately 6% of these cases.

41.    Furthermore, on information and belief, many additional instances of excessive force were known to the Department but never resulted in charges against the officers involved, such that these statistics significantly underestimate the extent and scope of the constitutional violations.

42.    Additionally, Defendants are in possession of Defendant Figgs's personnel file, including any disciplinary records, which may disclose additional grounds for Defendant City of St. Louis's failure to train, supervise, or discipline Defendant Figgs.

43.    Despite these prior incidents, Defendant City of St. Louis failed to train and supervise its officers, and did nothing to remedy these pervasive policies, customs, practices, and usages and in fact turned a "blind eye" to them.

44.    In light of these facts and the customs of the SLMPD, officers at the time of Plaintiff's shooting such as Defendant Figgs would have felt that they could use excessive force with impunity and without fear of discipline.

45.    The failure to train, discipline, or supervise by Defendant City of St. Louis has resulted in members of the SLMPD using excessive force as a matter of custom in violation of clearly established law. The failure to train, supervise, or discipline the Department's officers, including Defendant Figgs, is not objectively reasonable.

46.    As a result of the custom of use of excessive force, and Defendant City of St. Louis's continued failure to adequately train its officers, despite notice of persistent use of

-8-

excessive force by its officers, Defendant Figgs used excessive force against Plaintiff, leaving Plaintiff with extensive injuries that now leave him paralyzed from the waist down. This deprived Plaintiff of his rights to be free from excessive force and unlawful and unreasonable seizure in violation of the Fourth and Fourteenth Amendments and remediable under 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Wendell Davis prays judgment against Defendant City of St. Louis for compensatory damages in an amount which is fair and reasonable, and for the costs of this action, attorney's fees, interest, and such other and further relief as the Court deems fair and proper under the circumstances.

## COUNT IV
**Intentional Infliction of Emotional Distress Against Defendants**

47.     Plaintiff hereby incorporates paragraphs 1-19 as if fully set forth herein.

48.     Defendant Figgs owed a duty as a police officer to use only reasonable force and to protect Plaintiff from injury if possible. Nevertheless, acting within the course and scope of his employment with Defendant City of St. Louis and the SLMPD, Defendant Figgs intentionally fired his weapon at Plaintiff.

49.     Defendant Figgs never warned Plaintiff that he would shoot Plaintiff with a deadly weapon. Defendant Figgs shot Plaintiff numerous times in the back, using unnecessary and unprovoked lethal force.

50.     As a direct result of Defendant Figgs's actions, Plaintiff is now partially paralyzed and has suffered and is likely to continue suffering severe emotional distress.

51.     Defendant Figgs acted maliciously and in bad faith by choosing to use deadly force that he knew would cause severe bodily harm under circumstances that were entirely unreasonable. As such, Defendant Figgs is not entitled to official immunity.

-9-

52.     Defendant Figgs's infliction of emotional distress, as set forth above, was carried out with conscious disregard to the rights of Plaintiff, thereby entitling Plaintiff to punitive damages in an amount sufficient to punish and deter Defendant and others similarly situated from like conduct in the future.

53.     Defendant Figgs's actions were taken within the course and scope of his employment with Defendant City of St. Louis and the SLMPD. Upon information and belief, Defendant City of St. Louis has insurance for general liability and legal actions brought against it. Such coverage constitutes a waiver of sovereign immunity under the plain language of Mo. Rev. Stat. § 537.610.

WHEREFORE, Plaintiff Wendell Davis prays judgment against Defendant Amon Figgs and Defendant City of St. Louis jointly and severally for compensatory damages in an amount which is fair and reasonable, for punitive damages in order to punish and to deter them and others similarly situated from like conduct in the future, and for the costs of this action, attorney's fees, interest, and such other and further relief as the Court deems fair and proper under the circumstances.

## <u>COUNT V</u>
**Negligent Infliction of Emotional Distress Against Defendants, in the Alternative**

54.     Plaintiff hereby incorporates paragraphs 1-19 as if fully set forth herein.

55.     Acting within the course and scope of his employment with Defendant City of St. Louis and the SLMPD, Defendant Figgs, by shooting Plaintiff without just cause or provocation, caused grievous bodily injury to Plaintiff as set forth above. Plaintiff is now partially paralyzed as a result of these injuries.

56.     Defendant owed a duty as a police officer to use only reasonable force and to protect Plaintiff from injury if possible.

-10-

57.     Defendant Figgs breached this duty when he recklessly and negligently failed to warn Plaintiff that he would use a deadly weapon. Instead, Defendant Figgs shot Plaintiff in the back several times despite the fact that Defendant Figgs was not under threat of serious bodily harm.

58.     Defendant Figgs should have realized that the conduct of shooting Plaintiff repeatedly involved an unreasonable risk of causing emotional distress to Plaintiff.

59.     As a direct result of Defendant Figgs's actions, Plaintiff has suffered and is likely to continue suffering severe emotional distress.

60.     Defendant Figgs's reckless infliction of emotional distress, as set forth above, was carried out with reckless indifference and conscious disregard to the rights of Plaintiff, thereby entitling Plaintiff to punitive damages in an amount sufficient to punish and deter Defendant and others similarly situated from like conduct in the future.

61.     Defendant Figgs's actions were taken within the course and scope of his employment with Defendant City of St. Louis and the SLMPD. Upon information and belief, Defendant City of St. Louis has insurance for general liability and legal actions brought against it. Such coverage constitutes a waiver of sovereign immunity under the plain language of Mo. Rev. Stat. § 537.610.

WHEREFORE, Plaintiff Wendell Davis prays judgment against Defendant Among Figgs and Defendant City of St. Louis jointly and severally for compensatory damages in an amount which is fair and reasonable, for punitive damages in order to punish and to deter them and others similarly situated from like conduct in the future, and for the costs of this action, attorney's fees, interest, and such other and further relief as the Court deems fair and proper under the circumstances.

-11-

Date: August 29, 2022

Respectfully Submitted,

KHAZAELI WYRSCH LLC

/s/ James R. Wyrsch
James R. Wyrsch, 53197MO
Javad M. Khazaeli, 53735MO
911 Washington Avenue, Suite 211
St. Louis, MO 63101
(314) 288-0777
(314) 400-7701 (fax)
james.wyrsch@kwlawstl.com
javad.khazaeli@kwlawstl.com

Michael R. Murphy (to be admitted
pro hac vice)
Jeffrey S. Patterson (to be admitted
pro hac vice)
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, Massachusetts  02111
Tel:  +1 617 261 3100
Fax:  +1 617 261 3175
michael.r.murphy@klgates.com
jeffrey.patterson@klgates.com

*Attorneys for Plaintiff*