UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WENDELL DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:22-cv-00902-SEP |
| | ) |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

Before the Court are Defendants City of St. Louis and Officer Amon Figgs's Partial Motion to Dismiss, Doc. [8], and Plaintiff Wendell Davis's Motion to Amend Complaint, Doc. [26]. For the reasons set forth below, the partial motion to dismiss is granted and the motion to amend is granted in part and denied in part.

#### FACTS AND BACKGROUND

The Court accepts as true the following well-pled facts in Plaintiff's Complaint. Doc. [1]. On August 31, 2017, Defendant Figgs was on patrol in St. Louis, Missouri, when he encountered a parked vehicle with a license plate similar to one on his "hot sheet," a list containing license plates of reported stolen cars. *Id.* ¶ 8. Upon further inspection, Figgs determined that the plate did not match one on that list, nor did it match any reported stolen vehicle. *Id.* ¶¶ 9-10. Figgs nevertheless decided to stop the vehicle to ascertain whether it was stolen. *Id.* ¶ 10. Before Figgs approached the vehicle, he and other St. Louis Metropolitan Police Department (SLMPD) officers set up "spike teams" in several locations. Figgs then surveilled Plaintiff as he entered the vehicle as a passenger. *Id.* ¶ 12. When the vehicle drove away, Figgs proceeded to follow the vehicle in his own cruiser. *Id.*

Spike strips were deployed, flattening the vehicle's tires and bringing it to a stop. *Id.* ¶ 13. Plaintiff then exited the vehicle, and Figgs pursued Plaintiff on foot. *Id.* When Figgs caught up to Plaintiff, he fired three shots in Plaintiff's back without warning. *Id.* ¶¶ 14-16. Officer Figgs was at all times equipped with a taser. *Id.* Plaintiff contends that his "actions leading up to the shooting did not put Defendant Figgs in reasonable fear for his life or safety and did not otherwise justify the use of deadly force." *Id.* ¶ 18. Plaintiff "sustained grave injuries as a result of the shooting, such that [he] is paralyzed from the waist down." *Id.* ¶ 19.

Plaintiff filed this action against Defendants on August 29, 2022.  Doc. [1].  He asserts the following claims in his Complaint:  (1) use of excessive force in violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against Figgs; (2) unlawful seizure in violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against Figgs; (3) municipal liability and failure to train, supervise, and control in violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983; (4) intentional infliction of emotional distress against both defendants; and (5) in the alternative, negligent infliction of emotional distress against both defendants.  *Id.*

On November 4, 2022, Defendants filed a motion to dismiss Counts I, III, IV and V.  Doc. [8].  On April 7, 2023, Plaintiff moved to amend his Complaint.  Doc. [26].  Both motions are fully briefed and ready for disposition.

DISCUSSION

**I.    Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief."  To meet this standard and survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

Determining if well-pled factual allegations "plausibly give rise to an entitlement to relief" is a "context-specific" task requiring the court to "draw on its judicial experience and common sense."  *Id*. at 679, 682.  The factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct.  *Iqbal*, 556 U.S. at 682; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007).  The Court must then determine whether the plaintiff plausibly alleges a violation of the law.  *Iqbal*, 556 U.S. at 679.  The well-pled facts must establish more than a "mere possibility of misconduct."  *Id*.

2

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and "grant all reasonable inferences in favor of the nonmoving party," *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010) (citation omitted). But if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Although courts must accept all well-pled factual allegations as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677-78.

### A. Count I: Excessive Force Claim against Figgs

Defendants first ask the Court to dismiss Plaintiff's excessive-force claim against him to the extent the claim is predicated on the deployment of spike strips. Doc. [9-1] at 3-8; Doc. [20] at 1-3. Defendants argue that the Complaint fails to allege Figgs's personal involvement in the deployment of spike strips and that he enjoys qualified immunity on that portion of the claim in any event. In response, Plaintiff states that he "does not contend that Officer Figgs' use of spike strips is an independent theory of relief under Count I (excessive force)." Doc. [18] at 4.

Under Count I, the Complaint alleges that "Defendant Figgs's conduct in setting up spike teams for a regular traffic stop and the use of deadly force constitutes excessive use of force that was unreasonable, unlawful, and unconstitutional." Doc. [1] ¶ 28. Because Plaintiff now affirmatively disclaims that theory in response to the motion to dismiss, *see* Doc. [18] at 4, the Court grants Defendants' motion to dismiss Count I to the extent it alleges that deploying spike strips itself constituted an unconstitutional use of excessive force.

### B. Count III: *Monell* Claim against City

Defendants ask the Court to dismiss Plaintiff's § 1983 *Monell* claim against the City based on unlawful customs of use of excessive force and failure to train, supervise, and discipline. "A municipality may be held liable for a constitutional violation under section 1983 if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Jackson v. Stair*, 944 F.3d 704, 709 (8th

3

Cir. 2019) (internal quotation marks and citation omitted); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

> *i. Custom Liability*

Plaintiff does not identify an official municipal policy from which Defendant Figgs's alleged conduct resulted. The Court therefore turns its attention to the second possible *Monell* claim, custom liability. To state a claim for custom liability, Plaintiff must plead facts demonstrating:

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016) (citation omitted).

The City argues that the Complaint "fails to plausibly allege facts which demonstrate a pattern of persistent unconstitutional practices . . . so permanent and well settled as to have the effect and force of law." Doc. [9-1] at 9. Plaintiff, in response, contends that "the Complaint sets forth ample facts in support of [his] claim that his shooting was the result of the customs and usages of the City's police department, of which the City knew or should have known." Doc. [18] at 11-12. According to Plaintiff, it is enough for the Complaint to include allegations that SLMPD officers: 1) use improper and outdated policies and procedures; 2) use excessive force; 3) engage in unconstitutional conduct, "including but not limited to arresting, detaining and prosecuting people"; 4) "do not use the least intrusive means of force necessary"; and 5) "use deadly force to combat non-deadly force[.]" Doc. [18] at 12 (citing Doc. [1] ¶ 38). But such allegations lack "sufficient factual matter," and because they are no more than conclusions, they "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678, 679.[1]

---

[1] Relying on *Doe ex rel. Doe v. School Dist. Of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003), Plaintiff argues that Defendants "ignores . . . Eighth Circuit precedent . . . [and] improperly place an unnecessary burden upon Davis to *prove* his claim at the motion to dismiss stage." *See* Doc. [18] at 18. The Court disagrees. This Court has elsewhere articulated its reasons for rejecting the mistaken view that *Norfolk* provides a relaxed pleading standard for *Monell* claims, requiring a plaintiff to plead only enough facts for a court to conclude that, together with as-yet-undiscovered facts, the allegations might eventually establish a custom claim. *See Naes v. City of St. Louis*, 2021 WL 6049815, at *7 n.6 (E.D. Mo. Dec. 21, 2021); *see also Watkins v. City of St. Louis*, 2022 WL 4534947, at *9-10 (E.D. Mo. Sept. 28, 2022). It will not rehearse those reasons here. Suffice it to say, for *Monell* claims as for others, *Twombly* and *Iqbal*

Plaintiff attempts to buttress his claim by pointing to "publicly available Internal Affairs Division data" between 2006 and 2017 "evidencing that there were 358 official complaints regarding the use of force or the violation of the use of force policy" brought against City police officers over an 11-year period. Doc. [18] at 12; Doc. [1] ¶ 40. According to Plaintiff, the data also "reflects that charges against officers were sustained in only approximately 6% of these cases." Doc. [1] ¶ 40. Without more, that data does not show a "pattern of unconstitutional conduct . . . so pervasive and widespread so as to have the effect and force of law." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (citation omitted). Plaintiff does not specify the nature of those complaints, whether they involve similar circumstances, or whether or how those complaints were ever resolved. *See Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) ("[T]he mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force.").

The mere fact that charges against officers were sustained in only 6% of the 358 cases also does not imply a pattern of unconstitutional practices. There are many possible explanations for a numerical disparity between complaints lodged and charges sustained. Because Plaintiff offers no context or specifics relating the cited data to a custom, pattern, or practice of use of excessive force similar to that alleged by Plaintiff, the Court agrees with Defendants that Plaintiff has not shown more than a "mere possibility of misconduct." Doc. [20] (quoting *Iqbal*, 556 U.S. at 679); *see also Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 896 (E.D. Mo. 2019) (dismissal of § 1983 municipal liability claim appropriate where Plaintiff failed to allege "the number of complaints, claims, or lawsuits asserting excessive use of force in similar circumstances, whether or how those complaints, claims, or lawsuits were resolved, or other publicly-available data. . . ."); *Peterson v. Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) ("A pattern requires similarity and specificity" through "sufficiently numerous prior incidents as opposed to isolated instances" that "point to the specific violation in question." (cleaned up)); *Morgan-Tyra v. City of St. Louis*, 2022 WL 4378858, at *12 n.17 (E.D. Mo. Sept. 22, 2022)

---

entitle Plaintiff to the presumption that every well-pled factual allegation in his Complaint is true. But once that presumption is granted, his "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, although Plaintiff is not required to *prove* sufficient facts to support his *Monell* claims at the motion to dismiss phase, he must at least *allege* such facts. "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. Proc. 8(a)(2)).

(report summarizing SLMPD internal affairs complaints "consists of only numbers and statistics, devoid of any underlying facts of the alleged excessive force violations. Without more, Plaintiff cannot use this report as evidence of a pattern for municipality liability" (citing *Perkins v. Hastings*, 915 F.3d 512, 523 (8th Cir. 2019))).

Apart from conclusory allegations, *see* Doc. [18] at 10, Doc. [1] ¶¶ 45-46, the Complaint is also devoid of any allegations supporting an inference that the alleged custom was the "moving force" behind Figgs's use of force on Plaintiff. *Monell*, 436 U.S. at 694; *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 406-07 (1997) ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably."). For that reason as well, Plaintiff fails to state a *Monell* custom claim.

        *ii. Failure to Train*

According to Defendants, the Complaint also fails "to allege facts demonstrating that [the] City's training, supervision, or discipline is inadequate, such that these inadequacies were the cause of Plaintiff's alleged constitutional violation." Doc. [9-1] at 12. Plaintiff claims to have met his burden because "the Complaint alleges that the City failed to train, supervise, and discipline its police force regarding the use of deadly force." Doc. [18] at 16-17.

To state a claim for failure to train or supervise, Plaintiff must allege facts sufficient to show: "(1) notice of a pattern of unconstitutional acts committed by subordinates; (2) deliberate indifference to or tacit authorization of those acts; (3) failure to take sufficient remedial action; (4) proximate cause of the plaintiff's injury." *Ball-Bey*, 415 F. Supp. 3d. at 900 (citing *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012)); *see also City of Canton v. Harris*, 489 U.S. 378, 387 (1989). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted).

Plaintiff's Complaint alleges no facts about training the City provided or failed to provide to Figgs, nor does it include any facts about SLMPD's training program. "Without facts about the training [Figgs] did or did not receive, [Plaintiff] fails to sufficiently plead that a failure to train or supervise caused the constitutional violation." *Ball-Bey*, 415 F. Supp. 3d at 900. And for the same reasons that the Complaint's conclusory allegations, Doc. [1] ¶ 38, together with the

6

alleged 358 complaints regarding the use of force or violation of the use of force policy, fail to establish a pattern or practice of unconstitutional acts, those allegations likewise fail to establish a pattern of constitutional violations so obvious that policymakers could be charged with deliberate indifference to the need to better train their employees. *See Canton*, 489 U.S. at 390. Thus, Plaintiff fails to sufficiently plead a failure-to-train claim against the City.

### C. Counts IV and V: State Law Claims

Mo. Rev. Stat. § 516.130 provides that any "action against a sheriff, coroner or other officer, upon a liability incurred by the doing of any act in his official capacity and in virtue of his office, or by the omission of an official duty" must be brought within three years. Mo. Rev. Stat. § 516.130(1); *see* Doc. [9-1] at 12. Police officers are considered "other officers" under the statute. *Dilley v. Valentine*, 401 S.W.3d 544, 551-52 (Mo. Ct. App. 2013). Because the events in the Complaint allegedly occurred in 2017, and Plaintiff did not bring this action until August 29, 2022, Plaintiff's state law claims against Defendant Figgs are time-barred under § 516.130.[2]

Defendants argue that Plaintiff's state law claims against the City are also time-barred under § 516.130, because under Missouri case law, the City is also "considered an 'officer' for purposes of [§ 516.130(1)]." Doc. [9-1] at 13 (citing *Inv'rs Title Co. v. Hammonds*, 217 S.W. 3d 288 (Mo. 2007)). Although Plaintiff counters that "Missouri law is unclear on exactly when a City defendant may be treated as an officer for purposes of § 516.130," he provides no authority supporting that characterization of the case law and instead argues that a five-year limitations period provided by a separate statutory provision, Mo. Rev. Stat. § 516.120, should apply here as it did in *Cox v. Ripley County*, 233 S.W.3d 225, 229 (Mo. Ct. App. 2007). Doc. [18] at 19.

Plaintiff does not argue that his claim falls into any category listed in § 516.120, but he nevertheless urges the Court to find that *Cox*'s reasoning applies here because "the cause of action [i]s against not only individual officials, but also the entire county commission and the county." Doc. [18] at 19. Plaintiff misconstrues *Cox*. In that case, the Missouri Court of Appeals found that the "the five-year period under Section 516.120.2 is the proper limitations period," *Cox*, 233 S.W.3d at 229, because Plaintiff's claim was "[a]n action upon a liability created by a statute other than a penalty or forfeiture." Mo. Rev. Stat. § 516.120(2). The court

---

[2] Because Plaintiff failed to respond to Defendants' motion to dismiss his Missouri law claims against Defendant Figgs, *see* Doc. [9-1] at 12, he has waived any argument in opposition to dismissal of his state-law claims as to Defendant Figgs. *See Rivera v. Bank of Am., N.A.*, 993 F.3d 1046, 1051 (8th Cir. 2021).

also distinguished *Cox* from cases applying § 516.130(1)'s three-year limitations period on the grounds that the "entire county commission and the county [we]re the named defendants and *there [wa]s no allegation that the matter complained of was committed by any particular individual.*" *Cox*, 233 S.W.3d at 229 (emphases added); *see also id.* ("[T]he three-year period of Section 516.130.1 more appropriately applies when only one official is involved and the cause of action is based on an alleged wrong that occurred as part of that officer's official conduct.").

Plaintiff asserts no "liability created by a statute," and his cause of action is based on alleged wrongs committed by an individual officer, Defendant Figgs, in the scope of his conduct as a police officer.  Therefore *Cox*, like the cases cited by Defendant, supports application of § 516.130(1)'s three-year limitations period to Plaintiff's state law claims against the City.  *See Hammonds*, 217 S.W.3d at 292 (§ 516.130(1)'s three-year limitation period applied in action against the county and county recorder to recover money stolen by the recorder on basis that "the present suit is 'against an officer'" for purposes of the statute) (citation omitted); *see also Randle v. Joyner*, No. 2122-CC09792 (22nd Jud. Cir., Mo. Nov. 4, 2022) (§ 516.130(1)'s three-year limitation period applied in negligence action against police officer and City of St. Louis).[3] Thus, Plaintiff's state law claims against the City are time-barred.

## II.     Motion to Amend

Plaintiff asks the Court for leave to amend his Complaint.  Doc. [26].  According to Plaintiff, he "was recently acquitted of all felony charges in a three-day jury trial on the events underlying this matter, and the First Amended Complaint addresses the fact of his acquittal." *Id.* at 1.  He would also like to "correct[ ] a factual issue regarding the number of bullets that actually struck" Plaintiff.  *Id.*  Defendants "have no objection to an amendment" that includes the facts of Plaintiff's acquittal and the number of bullets that struck Plaintiff.  Doc. [32] at 1. Plaintiff may therefore amend the Complaint to include those facts.  *See* Fed. R. Civ. P. 15(a)(2).

Plaintiff also asks for leave to amend his Complaint to "expand[] upon [Plaintiff's] claim for municipal liability against the City of St. Louis" in Count III.  Doc. [26] at 1.  The proposed amendments include allegations that:  (1) the Force Investigations Unit "failed to adequately investigate the numerous police-involved shootings that occurred," Doc. [29-1] at 6-7;

---

[3] Because this Court finds that Plaintiff's state-law claims are time-barred under Mo. Rev. Stat. § 516.130, it need not address the City's alternative argument that it is entitled sovereign immunity on those claims.

(2) SLMPD failed to discipline and supervise members of the Anti-Crime Task Force, *id.* ¶ 43(f); and (3) SLMPD "officers maintained a longstanding pattern and practice of shooting at individuals who were fleeing and not dangerous," which Plaintiff attempts to demonstrate by describing ten[4] such incidents, *id.* at 9-10. Defendants oppose all of the proposed amendments to Count III on grounds of futility. Doc. [32] at 1. The Court agrees that the amendments would be futile.

Rule 15(a) of the Federal Rules of Civil Procedure states that courts "should freely give leave [to amend] when justice so requires." Under Rule 15's liberal amendment policy, "[d]enial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (quoting *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001)); *see also Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008).

"An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Hillesheim*, 897 F.3d at 955 (quoting *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)). In other words, "[a]lthough ordinarily the decision of whether to allow a plaintiff to amend the complaint is within the trial court's discretion, when a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion . . . ." *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007) (citing Fed. R. Civ. P. 12).

Even with Plaintiff's proposed amendments, Plaintiff's Count III could not withstand Defendants' Rule 12 motion. Plaintiff's allegations of ten instances of use of excessive force are not detailed enough to plausibly allege a widespread pattern of SLMPD officers using excessive force in a manner that is sufficiently similar to the facts alleged by Plaintiff here. *See Ball-Bey*, 415 F. Supp. 3d at 897 (rejecting allegations of 14 instances of purportedly similar uses of excessive force because they did not include "facts to establish excessive use of force, what caused the alleged excessive use of force, that the individual protested an unlawful arrest, that

---

[4] Although the proposed amended complaint, Doc. [26-1], contains ten separate sections alleging instances of misconduct, two of those, ¶ 45(c) and ¶ 45(f), are identical. Because the sections include no specifics other than the officer's name, it is impossible to discern if they purport to describe the same incident or separate incidents. Giving Plaintiff the benefit of all reasonable inferences, the Court counts them as two separate incidents. *See* Doc. [26-1] ¶ 45(a)-(j).

the individual was presented with a release agreement for civil liability, whether the individual signed the release, or whether the officer was ever investigated for his alleged misconduct"). Nor do they plausibly allege a pattern of constitutional violations so obvious that policymakers could be charged with deliberate indifference to a failure to train their employees. *See Canton*, 489 U.S. at 390.

Fully five of the ten proposed new paragraphs allege, in their entirety, that an SLMPD officer "discharged his weapon and charged the suspect with resisting arrest. The suspect was not a threat. The officer reported that there were no injuries." Doc. [29-1] ¶ 45(b), (c), (e), (f), (h). That cursory claim says nothing about the circumstances of each alleged use of force and includes only a conclusory allegation that the suspect, who is not even named, did not present a threat. Such threadbare, conclusory allegations do not meet the minimal pleading standard under *Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

Of the remaining five allegations, two allege the use of a taser. Those are not examples of "a longstanding pattern and practice of *shooting* at individuals who were fleeing and not dangerous," as Plaintiff claims. Doc. [29-1] ¶ 45 (emphasis added). Even assuming the remaining three incidents to be instances of precisely the kind of use of excessive force Plaintiff alleges to have suffered, those three incidents would not alone constitute a sufficient showing to sustain a *Monell* claim. This Court has elsewhere expressed skepticism that more robust allegations of eight instances of similar misconduct over a span of nine years could support a finding of a municipal custom under applicable precedent. *Naes v. City of St. Louis*, 2021 WL 6049815, at *4-5. In the same case, this Court observed that the plaintiff had failed to cite precedent in which conduct that occurred less than once a year qualified as a custom in any context. *Id.*

Here, the Court cannot compare Plaintiff's claims to the Eighth Circuit's unconstitutional custom precedents, as Plaintiff has not made sufficiently specific allegations for the Court to discern the time period over which the allegedly comparable incidents allegedly occurred, nor to gauge their similarity to the facts alleged in this case. But even if *all ten* incidents were sufficiently alleged for the Court to infer that they are relevant to Plaintiff's *Monell* claims (which seven of them appear not to be for the reasons already stated), Plaintiff still has not cited a single case in which proof of ten instances of misconduct over a matter of (at least) several years has been deemed sufficient to show a "pattern of unconstitutional conduct so pervasive and

widespread so as to have the effect and force of law." *Brewington*, 902 F.3d at 801 (internal quotation marks and citation omitted). And he certainly has not provided any basis for concluding that only a few such incidents could so qualify, especially considering the context of a police department that serves over 300,000 residents. *See* U.S. Dep't of Commerce, 2020 Census of Population and Housing (2022). Because, even with the proposed addition of ten purportedly comparable instances of use of excessive force, Plaintiff's Complaint would not sufficiently allege a pattern of unconstitutional conduct to sustain either of his theories of *Monell* liability, those proposed amendments would be futile.

Plaintiff's proposed amendments regarding the Force Investigations Unit and the Anti-Crime Task Force would also be futile. Without well-pled facts showing "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees," Plaintiff cannot state an unconstitutional custom claim under *Monell*, regardless of any allegations about investigative or disciplinary practices. *Corwin*, 829 F.3d at 700. Similarly, the failure to show "a pattern of unconstitutional acts committed by subordinates" is fatal to Plaintiff's failure to train claim, regardless of Plaintiff's other proposed amendments. *Ball-Bey*, 415 F. Supp. 3d. at 900.

Because the proposed amendments to Count III are futile, the Court denies Plaintiff leave to make them.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Partial Motion to Dismiss, Doc. [8], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend, Doc. [26], is **GRANTED in part and DENIED in part**. Plaintiff may amend his Complaint in accordance with Part II of this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Discovery, Doc. [24], is **DENIED as moot**.

Dated this 21st day of July, 2023.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE