UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WENDELL DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-CV-902-ZMB |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI | ) | |
| and OFFICER AMON FIGGS, *in his* | ) | |
| *individual capacity*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORADUM AND ORDER**

Before the Court is Plaintiff Wendell Davis's second motion to amend his Complaint. Doc. 101. The Court previously dismissed all of Davis's claims against Defendant City of St. Louis and also denied his motion for leave to amend the *Monell* claim against the City due to the futility of the proposed amendment. Doc. 49. Davis now renews his request to amend the Complaint due to the release of an audit report from the St. Louis Metropolitan Police Department (SLMPD) regarding its Force Investigation Unit (FIU). Specifically, the most recent proposed amendments[1] would add the City back to this case and reassert the *Monell* claim, buttressed with information from the FIU Audit and other sources. While these new allegations hardly paint a flattering picture of the FIU, they also do not change the Court's prior conclusion regarding the futility of a revised complaint. As a result, the Court must again deny Davis's motion to amend.

---

[1] At a status hearing, Davis's counsel agreed that Counts 4 and 5 were not intentionally included in the proposed pleading, as they were properly dismissed. Doc. 132 at 21–22. Accordingly, the Court deems these amendments abandoned and will not address them further.

# BACKGROUND

## I.    Factual Background

The Court accepts as true the following well-pled facts. On August 31, 2017, Defendant Amon Figgs was on patrol in St. Louis, Missouri, when he noticed a parked vehicle with a license plate number similar to one on his "hot sheet" of stolen cars. Doc. 1 ¶ 8. Upon closer inspection, Figgs determined that the plate did not match his list or, for that matter, any other vehicle that had been reported stolen. *Id.* ¶ 9. Nevertheless, he decided to investigate further. *Id.* ¶ 10. Before approaching the vehicle, Figgs and other SLMPD officers set up "spike teams" in various locations. *Id.* ¶ 11. Figgs then proceeded to surveil the vehicle as Davis entered the passenger seat. *Id.* ¶ 12. After the vehicle began to drive away, officers deployed spike strips to flatten its tires. *Id.* ¶¶ 12–13. When vehicle came to a stop, Davis got out, and Figgs pursued him on foot. *Id.* ¶ 13. Figgs eventually caught up with Davis and shot him in the back without warning and despite being equipped with a Taser. *Id.* ¶ 14–17; *see also* Docs. 26 ¶ 4, 26-1 ¶ 15 (correcting the number of times Davis was shot). As a result of the shooting, Davis remains paralyzed from the waist down. Doc. 1 ¶ 19.

## II.    Procedural Background

Davis filed this case in August 2022. *Id*. His original complaint contained a claim of municipal liability against the City. *Id.* ¶¶ 35–46. In November 2023, Defendants moved to dismiss the *Monell* and other claims against the City. Doc. 8. Five months later, Davis filed a motion to amend his complaint, including proposed amendments to the *Monell* claim. Doc. 26. The Court subsequently granted the Defendants' Motion to Dismiss and denied in relevant part Davis's Motion to Amend due to its futility. Doc. 49.

Davis now "seeks to amend in order to re-plead [the *Monell* claim] with more information regarding the systemic failures of the FIU." Doc. 102 at 6. The FIU was created in 2014 to investigate the criminal aspects of police shootings, and the SLMPD audited the Unit in 2017 to assess the efficacy of its work. Doc. 102-1 ¶¶ 40, 55. The report highlighted various policy violations and investigative shortcomings. *Id.* ¶¶ 38–53. At various points in this case, Davis attempted to obtain the FIU Audit in discovery. *See* Doc. 102 at 2–4 (describing efforts to uncover the report). A redacted version of report was then released in September 2024 in another case. *Ball-Bey v. Chandler*, No. 4:18-CV-1364-SPM, Doc. 449-1 (E.D. Mo. Sept. 26, 2024). Although the deadline for amending pleadings had long since passed, Doc. 85, Davis quickly filed a renewed motion to amend citing the information revealed in the FIU Audit. Doc. 101. The proposed amended complaint contains more than 30 new allegations from three sources: (1) the FIU Audit, (2) previously available information, and (3) details from "recently released" text messages. *See* Doc. 102-1. The City once again opposes the motion, arguing that the amendments remain futile and that it would be prejudiced at this late stage of the case. Doc. 109. Following Davis's reply, Doc. 121, the motion is ripe for resolution.

## LEGAL STANDARD

After the time for amendment "as a matter of course," a plaintiff may modify its complaint "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. (15)(a)(2). Rule 15 generally requires courts to "freely give leave to amend when justice so requires." *Id.* "But parties do not have an absolute right to amend their pleadings, even under this liberal standard." *Sherman v. Winco Fireworks*, 532 F.3d 709, 715 (8th Cir. 2008) (citation omitted). Indeed, various reasons justify a district court's denial of leave to amend, including "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.* (citation omitted).

"When a party seeks to amend after court-imposed deadlines for doing so," it must also satisfy the "stricter standards" of Rule 16, which requires a "showing of good cause." *Midwest Med. Sols. v. Exactech U.S.*, 95 F.4th 604, 607 (8th Cir. 2024) (citation omitted); *see also* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The application of the "good-cause standard is not optional." *Cheeks v. Belmar*, --- F.4th ---, 2025 WL 3560674, at *4 (8th Cir. 2025) (citation omitted). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman*, 532 F.3d at 716. "Only after the movant shows good cause may the court consider whether amendment is proper under Rule 15(a)." *Cheeks*, 2025 WL 3560674, at *3.

A moving party may fail to show "good cause when there has been no change in the law, no newly discovered facts, or any other changed circumstance after the scheduling deadline for amended pleadings." *Sherman*, 532 F.3d at 718 (quotation omitted); *see also Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020); *Spates v. Lombardi*, 2024 WL 3549101, at *2 (8th Cir. 2024). Similarly, courts have denied leave to amend where allegedly new facts were, in fact, available to the party prior to the amendment deadline. *See, e.g.*, *IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 524 (D. Minn. 2018). And "futility is always a basis to deny leave to file an amended complaint." *A.H. v. St. Louis Cnty.*, 891 F.3d 721, 730 (8th Cir. 2018).

## DISCUSSION

### I.    Rule 16 Good-Cause Analysis

As a threshold matter, this Court must examine whether Davis has demonstrated sufficient diligence in pursuing his proposed allegations to justify the filing of an amended complaint more than a year after the applicable deadline. *See* Doc. 23; *Cheeks*, 2025 WL 3560674, at *3. There is little doubt that Davis's exhaustive efforts to obtain the FIU Audit and the speed with which he filed a second motion to amend after the report's release constitute good cause for that new information. Doc. 102 at 1–4. However, he has not shown the same diligence with respect to the other new facts, as this information was either publicly available or reasonably discoverable well before the pleading-amendment deadline.

4

A majority of the new allegations contain information that was previously available in the public sphere. These facts include the 2009 deposition of Michael Sack, the disciplinary hearing of Steven Burle, public statements made by the FIU in 2014, the 2021 report from the Arch City Defenders, police policies and general orders, and general information about previous police shootings.[2] Doc. 102-1 ¶¶ 39–43, 53. Indeed, Davis does not even attempt to suggest he had good cause for adding these publicly available facts, apparently recognizing his lack of diligence. Doc. 102 at 5; *see Int'l Techs. Mktg. v. Verint Sys.*, 850 F. App'x 38, 43 (2d Cir. 2021) (affirming denial of motion to amend based on information that was publicly available before the amendment deadline); *Morgan Art Found. v. McKenzie*, 2021 WL 863264, at *7 (S.D.N.Y. Jan. 22, 2021) ("[M]aterial that is already in the public domain . . . [b]y definition . . . cannot justify a late motion to amend.") (collecting cases).

Davis likewise has not shown diligence with respect to the text messages cited in his proposed amendments. Doc. 102-1 ¶ 50; *Davidson v. MTD Prods. Co.*, 2025 WL 289477, at *4 (11th Cir. Jan. 24, 2025) (finding no abuse of discretion in denying leave to amend based on lack of diligence) (citing *Millennium Partners v. Colmar Storage*, 494 F.3d 1293, 1299 (11th Cir. 2007)). There is no indication that he specifically requested or was denied access to these messages (or their content) prior to the FIU Audit's public release, and some basic Google queries suggest that they became public well before the amendment deadline. In any event, given that Davis bears the burden of establishing good cause, *see Sherman*, 532 F.3d at 716, his failure to even address diligence as to this information is dispositive.

---

[2] The Court recognizes that the FIU Audit adds a few minor details about the shootings, but the vast majority of facts appear to be public information that was available before the report's release. *See Ball-Bey*, No. 4:18-CV-1364-SPM, Doc. 449-1 at 31, 37; Doc. 102-1 ¶¶ 63, 65. Nor does Davis even attempt to meet his burden of explaining otherwise.

In sum, Davis has demonstrated "good cause" under Rule 16 to amend his complaint to include allegations directly related to the FIU Audit. But he has not shown the same diligence in uncovering information previously known to the public, including the "recently released" text messages. As such, the Court will consider only the FIU Audit in its analysis under Rule 15(a).[3]

## II.    Rule 15(a) Futility and Prejudice Analysis

Once the Court has determined that good cause exists for an amendment, it must analyze the proposed complaint under Rule 15(a). *See id.* at 716 (citation omitted); *Mahnken v. Wright Med. Tech.*, No. 4:18-CV-2095-SRC, 2020 WL 255809, at *1 (E.D. Mo. Jan. 17, 2020) ("If a party has been diligent in meeting the scheduling order's deadlines, the Court should then decide if the amendment is proper under Rule 15(a)."). This analysis includes considering whether the amendment would be futile or if there would be "unfair prejudice to the non-moving party." *Mahnken*, 2020 WL 255809, at *1. Both hurdles preclude amendment here.

### a.    Futility

Davis seeks "to replead his *Monell* claim against the City," Doc. 101 ¶ 6; Doc. 102-1 ¶¶ 37–69, while the City opposes the proposed amendment primarily on the grounds of futility, Doc. 109. "An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule

---

[3] The parties have not cited—and the Court could not locate—any authority directly addressing the proper analysis where a party establishes good cause for some proposed amendments while failing to show diligence with respect to others. But courts have suggested that, at most, only new facts and related allegations should be evaluated under Rule 15. *See, e.g., Farsura v. QC Terme US Corp.*, 342 F.R.D. 373, 376–77 (S.D.N.Y. 2022) (granting leave to amend in part while rejecting attempt to use genuinely new facts to shoehorn previously known and publicly available information), *vacated on reconsideration to deny motion to amend*, 2023 WL 2919553 (Mar. 14, 2023); *Ruvalcaba v. Ocwen Loan Servicing*, 2018 WL 295973 (S.D. Cal. Jan. 4, 2018) (finding no good cause where only 2 of 30 new allegations were based on information from after the amendment deadline); *cf. Carbajal v. Dorn*, 2010 WL 487433, at *2 (D. Ariz. 2010) (striking new allegations that exceeded the scope of previously authorized amendments for failure to show good cause). Moreover, this Court is convinced that entertaining non-diligent proposed amendments would undermine the rationale for requiring the good-cause showing in the first place—namely, respect for court-ordered deadlines and efficient case management. *See Cheeks*, 2025 WL 3560674, at *4 ("Applying Rule 15(a) without first requiring good cause under Rule 16(b) would effectively read the good-cause requirement out of the Federal Rules of Civil Procedure."). That said, even were the Court to consider all of Davis's new allegations in its futility analysis, he still would fail to establish an unconstitutional custom or failure to train, supervise, or discipline for similar reasons.

12(b)(6).'" *Hillesheim v. Myron's Cards & Gifts*, 897 F.3d 953, 955 (8th Cir. 2018) (quoting *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)). Thus, the Court must examine the proposed complaint to see if Davis's new allegations would allow him to survive a motion to dismiss. *See* Doc. 49 at 2 (setting out the relevant legal standard).

Given that Davis seeks to renew his *Monell* claim against the City, the Court must again assess municipal liability under section 1983. The Court previously detailed the types of *Monell* claims and relevant standards, *see* Doc. 49 at 3–4, but it bears repeating that "[t]he Supreme Court has set a high bar" for establishing such liability "and demands careful analysis . . . to avoid any risk that liability could be imposed under a theory of respondeat superior." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017). Davis does not meaningfully allege an official policy or a failure to train,[4] so an unofficial custom and a failure to supervise or discipline are the only types of *Monell* claims before the Court. *See Watkins v. City of St. Louis*, 102 F.4th 947, 953 (8th Cir. 2024). Davis's proposed amendments fall short of establishing either of these claims.

### 1.    *Unconstitutional-Custom*

To establish an unconstitutional unofficial custom, Davis must show: "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by [government] employees; (2) deliberate indifference to or tacit authorization of such conduct by . . . policymaking officials after notice . . . of that misconduct; and (3) an injury by acts pursuant to the government entity's custom." *Edwards v. City of Florissant*, 58 F.4th 372, 376 (8th Cir. 2023) (citation omitted). Further, this custom must be "the moving force behind the constitutional violation." *Watkins*, 102

---

[4] While Davis has styled the *Monell* claim in his proposed amended complaint as a broad "Failure to Train, Supervise, and Discipline," the specifics of Davis's proposed amendments primarily revolve around supervisory failures, along with potentially intentional failures to investigate police shootings, Doc. 102 at 3, with only conclusory allegations regarding the failure to train officers, Doc. 101 at 3; Doc. 102-1 ¶¶ 71–74. Thus, Davis has at most alleged a failure to supervise or discipline, and the Court will consider only these non-conclusory allegations. Doc. 102 at 9, 12.

F.4th at 953 (quotation and alterations omitted). In other words, there must be "a direct causal link between the municipal policy or custom and the Plaintiff's constitutional deprivation." *Jackson v. City of Maplewood*, No. 4:24-CV-1207-NCC, 2025 WL 2299393, at *7 (E.D. Mo. Aug. 7, 2025) (quoting *Danielson v. Huether*, 355 F. Supp. 3d 849, 872 (D.S.D. 2018)).

Davis's proposed amendments include allegations about: (1) the FIU Audit, (2) the SLMPD's purportedly similar shootings of fleeing suspects, and (3) "recently released" text messages.[5] Doc. 102-1 ¶¶ 38–69. Davis asserts that these facts help prove that, at the time of his shooting, the SLMPD "employed a custom of turning a blind eye to its officers' rampant use of excessive force." Doc. 121 at 6. Even taken in the light most favorable to Davis, these facts would not change the Court's previous conclusion that the *Monell* claim cannot survive a motion to dismiss.

Critically, Davis again fails to plead facts sufficient to meet the second element: "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials ***after notice to the officials*** of that misconduct." *See Jackson*, 2025 WL 2299393, at *7 (emphasis added). While the proposed complaint is replete with allegations of wrongful conduct, it fails to assert that SLMPD policymaking officials were on notice of this misconduct. Significant

---

[5] As discussed above, the Court will consider only the facts directly drawn from the FIU Audit in its futility analysis, as Davis has not demonstrated good cause for his delay in including the other allegations. However, even if Davis had good cause for pleading the other information at this late stage, his proposed complaint still falls short of establishing a custom. Specifically, Davis points to seven shootings and one tasing to suggest that, even before the audit, policymakers would have had "constructive" notice of the issue. *See Burbridge v. City of St. Louis*, 430 F. Supp. 3d 595, 619–20 (E.D. Mo. 2019) ("Multiple incidents of misconduct may establish the existence of a custom if some evidence indicates that the incidents occurred over a course of time sufficiently long enough to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials."). But seven shootings over the course of six years is insufficient to show a custom. *See Naes v. City of St. Louis*, No. 4:19-CV-2132-SEP, 2021 WL 6049815, at *5 (E.D. Mo. Dec. 21, 2021) (finding eight incidents over nine years insufficient); *see also Burbridge*, 430 F. Supp. 3d at 620–21 (concluding that "two or three" instances of unconstitutional conduct a year apart do not establish a custom). As the Court previously noted, even ten incidents over the course of several years would be insufficient to establish a custom "in a police department that serves over 300,000 residents." Doc. 49 at 10–11. For similar reasons, the text messages do not demonstrate a sufficiently widespread pattern that can be imputed to the City. Thus, Davis has again failed to plead an unconstitutional-custom claim.

in this regard is the timing of events. The FIU Audit is dated May 17, 2018, Doc. 102 at 1, but Davis's injury occurred months earlier, in August 2017. Doc. 1 ¶ 8. Thus, even if the FIU Audit were sufficient to show an unconstitutional custom, there is no indication that policymakers were on notice of the problems identified in the report until almost a year after Davis's injury. This failure to show notice is fatal to a *Monell* custom claim. *See Edwards*, 58 F.4th at 378.

### 2.    Failure to Supervise or Discipline

Pleading a failure to supervise or discipline under section 1983 here requires facts sufficient to show that: (1) the City's supervisory or disciplinary practices were inadequate; (2) the City was deliberately indifferent to the rights of others in adopting those practices and its failures were the result of deliberate and conscious choices; and (3) the City's alleged deficiencies caused Davis's constitutional deprivation. *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). "Deliberate indifference is a stringent standard of fault," absent a "pattern of similar constitutional violations," a plaintiff would have to demonstrate that the need for more supervision or discipline was "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [SLMPD] can reasonably be said to have been deliberately indifferent to the need." *Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019) (quotations omitted). Under Eighth Circuit precedent, a failure to train, supervise, or discipline is the most difficult *Monell* claim to make because, "[i]n virtually every instance where a person has [allegedly] had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Mendoza v. United States Immigr. & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017) (citation omitted).

While the FIU Audit paints a picture that is by no means flattering, Davis has not sufficiently pled that the City was deliberately indifferent to the issues highlighted in the audit. As

9

an initial matter, as the City notes, the audit itself was the product of the SLMPD attempting to remedy these very problems once a new head of the FIU became aware of them in 2018. Doc. 109 at 8. But even considering the allegations regarding the FIU Audit in the light most favorable to Davis, they lack the specificity required to establish a failure to supervise or discipline. Davis's proposed amendments allege several failures on the part of the FIU, including investigatory errors, issues caused by FIU officers working secondary jobs, limited command oversight, officers approving their own reports, and delays in beginning investigations. However, Davis does not establish that the issues with the FIU were so obvious and so likely to violate an individual's constitutional rights that liability should be imputed to the City—much less that any relevant policymakers were effectively on notice of these issues in August 2017.

Accordingly, the Court must again deny Davis's motion to amend on futility grounds, as it is unlikely that his proposed complaint would survive a motion to dismiss under Rule 12(b)(6).

### b. *Prejudice*

The prejudice from allowing an amendment at this stage of litigation provides an independent basis for denying the motion to amend. Davis suggests that the City's repeated delay in releasing the FIU Audit precludes a finding of prejudice. Doc. 102 at 10–11. He also asserts that the facts underlying his claim were "known or available to all parties" and that the amendments would not "radically alter the scope and nature" of this litigation. *Id.* But the record belies these claims.

The Eighth Circuit has noted that "[a]ny prejudice to the nonmovant must be weighed against the prejudice to the moving party by not allowing the amendment." *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). Further, "when late tendered amendments involve new theories of recovery and impose additional discovery requirements, courts are less likely to find

an abuse of discretion due to the prejudice involved." *Id.*; *see also Popoalii v. Corr. Med. Servs.,* 512 F.3d 488, 497 (8th Cir. 2008) (same).

Here, any hardship to Davis would be minimal given the futility of the amendment, and the prejudice to Defendants is obvious. The Court dismissed the claim against the City more than two years ago. Since that time, discovery has been completed, and the parties have fully briefed a motion for summary judgment, as well as dueling *Daubert* motions. Docs. 92, 94, 96. Contrary to Davis's claim that the proposed amendments would not radically alter the scope of this litigation, renewing the *Monell* claim against the City would require reopening of discovery, additional expert reports, and renewed motions for summary judgment—significantly delaying the ultimate resolution of this case. Thus, the prejudice to both the City and Figgs of permitting a belated amendment strongly outweighs the harm to Davis, bolstering the rationale for denying his motion.

## CONCLUSION

Accordingly, the Court **DENIES** Plaintiff's second [101] Motion for Leave to Amend the Complaint.

So ordered this 5th day of January 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE

11